IN THE UNITED STATES DISRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE NEELY GROUP, INC., an Illinois Corporation, | )<br>)<br>) |
| Plaintiff, | ) Case No.:<br>) |
| v. | )<br>) JURY TRIAL |
| HNO INTERNATIONAL INC., COALITION AGAINST BLACK CARBON, INC., and DONALD OWENS, | ) DEMANDED ON<br>) ALL ISSUES TRIABLE<br>) TO A JURY |
| Defendants. | )<br>) |

### COMPLAINT AGAINST HNO INTERNATIONAL, COALITION AGAINST BLACK CARBON AND DONALD OWENS

#### Parties and Jurisdiction

1. Plaintiff, the Neely Group Inc. ("Neely Group"), is an Illinois C-corporation, having its principal place of business at 1020 West Oakdale Ave, Chicago, IL. Steve Neely, a well-respected consultant, is the President of the Neely Group. The Neely Group is a citizen of Illinois.

2. Defendant, HNO International Inc. ("HNO"), is a Nevada C-corporation, having its principal place of business at 41558 Eastman Drive, Murrieta CA. It is a citizen of Nevada and California.

3. Defendant, Coalition Against Black Carbon Inc. ("Coalition Against Black Carbon"), is a California non-for-profit corporation, having its principal place of business at 42309 Winchester Road, Temecula, CA. It is a citizen of California.

1

4. Defendant, Donald Owens, is a citizen of California. Mr. Owens is the Chairman of HNO and is Coalition Against Black Carbon's CEO, CFO and Secretary. Mr. Owens runs and controls HNO and the Coalition Against Black Carbon.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because the action is exclusively between (1) a citizen of Illinois and (2) citizens of California and Nevada, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6. This Court has personal jurisdiction over defendants, HNO, Coalition Against Carbon and Mr. Owens, under 735 ILCS 5/2-209(a)(1), (2), and (7).

7. Venue is proper in this district under 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims occurred in this district.

**Background**

8. On March 1, 2022, Donald Owens, on behalf of HNO, wrote to Mr. Neely requesting that the Neely Group assist HNO with getting involved with the Department of Energy's Hydrogen RFI Assistance Program, including drafting grant proposals, marketing, branding, making introductions to industry leaders and politicians, and otherwise effectively positioning HNO to gain a foothold in this market. (Exhibit 1, March 1, 2022 letter).

9. Prior to signing any written agreement, the Neely Group and HNO orally agreed that the Neely Group would perform consulting services for HNO and its affiliated entities. In exchange, HNO would pay the Neely Group a $5 million non-refundable retainer. $1 million was to come in the form of cash, and $4 million was to come in the form of unrestricted HNO stock.

10. On March 7 and 8, 2022, the parties sought to memorialize their agreement in writing.

11. The March 7, 2022 written contract, however, mistakenly states that the parties' contract is between the Neely Group and "Black Carbon Coalition Inc." (Exhibit 2). To our knowledge,

2

Black Carbon Coalition Inc. does not even exist. Defendant, the Coalition Against Black Carbon Inc., is a not-for-profit and thus does not have $4 million in stock to transfer to the Neely Group. The remainder of the written consulting agreement accurately memorializes the parties' oral agreement prior to their signing the written consulting agreement.

12. The designation of Black Carbon Coalition Inc. as the party to the March 7, 2022 Consulting Agreement was a mutual mistake of fact. The proper parties to the Consulting Agreement should have been the Neely Group and HNO—the only party who could convey the $4 million in HNO stock.

13. Two days after the inaccurate contract was entered into and one day after it was signed, Defendant Owens forwarded to Mr. Neely information regarding HNO's articles of incorporation. (Exhibits 3-4, March 9, 2022 emails), further reflecting that the Neely Group was performing work for HNO.

14. On March 13, 2022, Mr. Neely was appointed the Chief Marketing Officer of HNO. (Exhibit 5).

15. On March 21, 2022, Mr. Neely was further appointed HNO's Chief Operations Officer. (Exhibit 6).

16. On April 11, 2022, Paul Mueller, the President of HNO Generators-- another company affiliated with Mr. Owens and HNO—informed Mr. Neely that Wil Cashen (HNO's President) had asked him to "reach out" to Mr. Neely. He further stated that "HNO International has retained your services to help us…." (Exhibit 7).

17. On May 10, 2022, Mr. Neely wrote to Mr. Owens and discussed his "engagement with HNO." (Exhibit 8).

18. On June 13, 2022, Mr. Owens sent Mr. Neely images of HNO's product lines. (Exhibit 9).

19. The Neely Group further billed HNO, which never objected to being the party that was invoiced. Some of these bills were in fact paid, further confirming the Neely Group's contractual relationship with HNO. (Group Exhibit 11, Bills)

20. Unquestionably, HNO is the party obligated to pay the Neely Group $4 million in stock.

21. That $4 million stock obligation is equally indisputable.

22. HNO or an affiliate made the initial $1 million payment called for under the Consulting Agreement.

23. However, the non-refundable stock payment never was made.

24. On September 20, 2022, Mr. Owens unilaterally terminated the contract. (Exhibit 10).

25. As of this date, the Neely Group has been paid roughly $1.4 million, consisting of the initial payment plus two additional payments totaling approximately $400,000. This is approximately the same amount the Neely Group has expended in costs for HNO and its related entities.

26. From March 7, 2022 through September 20, 2022, the Neely Group worked diligently and effectively for HNO, including (1) assisting in the development of HNO's public relations campaign, (2) editing and developing written content for HNO, (3) strategically helping HNO with its business models, and (4) obtaining exposure for HNO with high level public officials. Indeed, the Neely Group introduced Donald Owens and HNO to former President Obama, House Speaker Nancy Pelosi, and other congress people. The Neely Group also secured a speaking assignment for HNO before the United Negro College Fund.

27. The Neely Group performed and was performing all work required under the Consulting Contract at the time of its termination.

28. The Consulting Agreement contains an arbitration provision. (¶9). The Consulting Agreement, however, is governed by Illinois law (¶XXII), which does not permit an arbitrator to reform a contract. Stated another way, the arbitrator's task is limited to adjudicating "disputes aris[ing] under the Agreement," (¶9), not revising the agreement to reflect the actual intent of the parties. Further, the Illinois Arbitration Act only applies to "written agreement[s]," 710 ILCS 5/1, and the Neely Group's agreement with HNO is not currently a written agreement. The arbitration provision is also discretionary and permits a party who does not wish to "abide by any decision of the arbitrator" "to [pursue] litigation." (¶9). Thus, the Neely Group can proceed with its claims for contract reformation, enforcement of a contract-implied-in fact, a contract-implied-in-law and a declaratory judgment before this Court. To the extent, settlement efforts must be attempted before a lawsuit is filed, the Neely Group has fulfilled this obligation.

## Count 1

### (Contract Reformation Against All Defendants)

1-28. All prior paragraphs are hereby realleged and incorporated by reference in Count 1.

29. The Neely Group and HNO reached an agreement whereby the Neely Group would receive $1 million in cash plus $4 million in HNO stock. This agreement was reached before the Consulting Agreement was signed.

30. In reducing the agreement to writing, the parties made a mutual mistake of fact. They designated Black Carbon Coalition Inc. as a signatory instead of HNO. Indeed, the Consulting Agreement calls for the conveyance of $4 million in stock by Black Carbon Coalition Inc. This

5

entity does not exist, and the Coalition Against Black Carbon is a not-for-profit, which likewise cannot convey $4 million in stock.

31. Mr. Owens, Coalition Against Black Carbon Inc., HNO and the Neely Group all intended HNO to be a party to the Consulting Agreement.

32. The Neely Group requests that this Court reform the Consulting Agreement and award it $4 million in damages for defendants' breach of that agreement, plus $2,062,987 which is the amount of costs and fees that the Neely Group has incurred for a total of $6,062,987. The Neely Group further requests all other relief that this Court deems just and proper.

## Count 2

### (Contract Implied-In-Fact Against HNO)

1-32. Paragraphs 1-28 above are hereby realleged and incorporated by reference in Count 2.

33. Count 2 is pled in the alternative to Counts 1 and 3. It seeks relief not based on reformation of a written contract or based upon the Neely Group's equitable right to be paid but rather based on the existence of a contract formed through the parties' course of dealing.

34. HNO requested that the Neely Group perform work on its behalf. The Neely Group signed a contract with an entity affiliated with HNO providing that the Neely Group would receive $4 million in stock, which only could have meant HNO stock. The Neely Group performed work for HNO as requested. The Neely Group billed HNO, and some of these bills were paid. The Neely Group has outstanding bills to HNO for more than $2.0 million in expenses. (*See* Exhibit 11).

35. By virtue of the parties' course of dealing, a contract implied-in-fact exists between the Neely Group and HNO whereby HNO would pay the Neely Group $4 million in stock, plus

$2,062, 987 which is the amount of costs and fees that the Neely Group has incurred for a total of $6,062,987.

36. The Neely Group is owed this renumeration pursuant to the parties' contract implied-in-fact and has completed all obligations required for it to be paid.

37. Accordingly, the Neely Group is entitled to $6,062, 987 from HNO and all other relief that this Court deems just and proper.

## COUNT 3

### (Contract Implied-In-Law Against HNO)

1-37. Paragraphs 1-28 above are hereby realleged and incorporated by reference in Count 3.

38. Count 3 is pled in the alternative to Counts 1 and 2 and assumes that no contract exists between the parties.

39. A contract implied-in-law exists between the Neely Group and HNO because the Neely Group rendered services that were knowingly and voluntarily accepted by HNO, and the services were given and received in the expectation of the Neely Group being paid.

40. To date, the Neely Group has expended far more on out-of-pocket expenses for HNO than it has been paid.

41. The Neely Group is entitled to recover from HNO the reasonable value of its services, which equals or exceeds $6,062,987 million and further requests all other relief that the Court deems just and proper.

## COUNT 4

### (Declaratory Judgment Against All Defendants)

1-41. Paragraphs 1-28 above are hereby realleged and incorporated by reference in Count 4

42. The Neely Group has an enforceable contract with HNO, a contract implied-in-fact with HNO or a contract-implied-in-law with HNO.

43. The Neely Group has not been paid monies it is owed by HNO.

44. There exists an actual controversy between the Neely Group and the Defendants because the Defendants are not honoring HNO's contractual or equitable obligations to the Neely Group. Accordingly, the Neely Group requests a declaration that (1) it has a binding contract with HNO (*See* Counts 1,2) or alternatively has a contract-implied-in law with HNO. (*See* Count 3). The Neely Group further seeks a declaration that it is owed $6,062,987 million and requests all other relief that the Court deems just and proper.

/s/ Stephen Scallan
Stephen Scallan

Stephen Scallan
Staes & Scallan, P.C.
53 W. Jackson St.
Suite 560
Chicago, Illinois 60604
(312) 631-3139
ARDC No. 6230195
stevescallan@staesandscallan.com
*Attorneys for the Neely Group*