UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE NEELY GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> HNO INTERNATIONAL INC., BLACK CARBON COALITION, INC., and DONALD OWENS, <br><br> Defendants. | No. 22 C 7347 <br><br> Judge Thomas M. Durkin |
| HNO INTERNATIONAL INC. and BLACK CARBON COALITION, INC., <br><br> Counter-Plaintiffs, <br><br> v. <br><br> THE NEELY GROUP, INC. and MORRELL "STEVE" NEELY, <br><br> Counter-Defendants. | |

**MEMORANDUM OPINION AND ORDER**

The Neely Group Inc. brought this suit against HNO International Inc. ("HNO"), Black Carbon Coalition, Inc. ("BCC"), and Donald Owens in connection with their refusal to pay certain monies purportedly owed under a contract for consulting services. HNO and BCC filed a counterclaim alleging that The Neely Group breached the contract and its President Steve Neely committed fraud. HNO and BCC now move to amend their counterclaim. R. 48. For the following reasons, that motion is granted.

1

**Background**

This case arises out of a contract dispute between Steve Neely and The Neely Group and Donald Owens, HNO, and BCC. Since filing this suit in December 2022, The Neely Group has amended its complaint twice. The operative complaint alleges as follows:

Neely is a consultant and President of The Neely Group. R. 14 ("SAC") ¶ 1. Owens is the Chairman of HNO and Chairman and secretary of BCC. *Id.* ¶ 4. On March 1, 2022, Owens wrote to Neely requesting that The Neely Group help HNO get involved with the Department of Energy's Hydrogen RFI Assistance Program. *Id.* ¶ 8. The parties orally agreed that The Neely Group would perform consulting services for HNO and its affiliates in exchange for a $5 million retainer, consisting of $1 million in cash and $4 million in unrestricted HNO stock. *Id.* ¶ 9. About a week later, The Neely Group and BCC entered into a written agreement. *Id.* ¶¶ 10, 11. As BCC is a non-profit that does not have stock, it was always understood between the parties that The Neely Group was to receive the $4 million in HNO stock, and that it was to perform work for both HNO and BCC. *Id.* ¶ 11. Over the next several months, The Neely Group performed work for HNO under the contract, including, among other things, facilitating exposure to high-level government officials. *Id.* ¶ 26. Neely was also appointed HNO's Chief Marketing Officer ("CMO") and Chief Operations Officer ("COO"). *Id.* ¶¶ 14, 15. The Neely Group billed HNO, and Owens approved the invoices on a monthly basis during calls with Neely. *Id.* ¶ 19; R. 14-11. The Neely Group was paid $1,425,000 in total, including $1 million on March 9, 2022, $225,000 on June 1, 2022, and $200,000 on July 22, 2022. SAC ¶¶ 22, 25; R. 14-12. On

September 20, 2022, Owens terminated the contract. SAC ¶ 24. Plaintiff never received the HNO stock. *Id.* ¶¶ 22–23. The Neely Group asserts breach of contract and contract reformation against BCC and HNO, contract implied-in-law and implied-in-fact against HNO, and veil piercing against Owens and HNO, and asks for $3,575,000 in damages.

Defendants filed an answer and Counter-Plaintiffs HNO and BCC filed a counterclaim. R. 15. Counter-Plaintiffs' allegations about the formation of the contract, the appointment of Neely as a corporate officer, and the amounts paid generally track with The Neely Group's complaint. However, Counter-Plaintiffs also allege as follows: BCC is a Public Benefit Corporation that is authorized to issue stock. *Id.* at p. 14 ¶¶ 3–4. The $4 million in HNO stock was to be paid based on The Neely Group reaching mutually agreed upon milestones and subject to accounting in the form of monthly expense reports. *Id.* at p. 15–16 ¶¶ 15, 16. The milestones were never proposed and agreed upon, and no monthly expense reports were ever provided. *Id.* at p. 16 ¶¶ 18, 19, 33. Further, between May and July 2022, Counter-Defendants contracted with two third parties, Interdependence Public Relations ("Interdependence") and Ricchetti, Inc., to perform many of the same services BCC hired The Neely Group to provide. *Id.* at p. 17 ¶¶ 25–30. In May 2022, Neely sent Owens an invoice purportedly from Interdependence marked, "This account is paid in full." *Id.* at p. 17 ¶ 29. Months later, after Owens terminated the contract, Owens learned from Interdependence's Chairman that work for HNO was ongoing and that Interdependence had not been paid for its work. *Id.* at p. 18 ¶ 31. Counter-Plaintiffs

bring claims for breach of contract, breach of fiduciary duty, intentional misrepresentation, and fraud. Relevant here, the fraud claim is premised on the allegation that Neely falsely claimed that he had paid an invoice in the amount of $834,960 that was purportedly issued by Interdependence. *Id.* at p. 23 ¶ 66.

On April 8, 2024, the Court stayed this matter as a result of The Neely Group's bankruptcy filing. R. 40. In July 2024, the bankruptcy matter was dismissed, and upon notification, the Court lifted the stay. R. 44. When settlement discussions stalled, Counter-Plaintiffs filed the instant motion, in which they seek leave to file an amended counterclaim based on facts learned in the bankruptcy proceeding, namely:

- The Neely Group runs at least two UPS franchises in Chicago for which it sought bankruptcy protection.
- The Neely Group runs UPS franchises and is not in the business of providing introductions to Washington, D.C.-based politicians.
- Steve Neely's social media posts claim no experience in introducing The Neely Group's clients to government officials at any level.
- Counter-Plaintiffs paid The Neely Group $1,425,000 for the purpose of introducing Counter-Plaintiffs to certain politicians in order to encourage climate change legislation.
- Counter-Defendants did "no discernable work on Counter-Plaintiffs' behalf" which led Owens to terminate the contract on September 20, 2022.
- After the termination of the contract, The Neely Group's finances "began to unravel."
- On October 19, 2022, The Neely Group received an SBA loan through Old National Bank for $1,542,600.00, encumbering all current and future assets.
- On June 7, 2023, The Neely Group received a loan from IOU Financial and defaulted on its $138,565.81 obligation, which a collection agency began to pursue on November 27, 2023.

- From June 2023 through February 2024, The Neely Group "bounce[d] EFT payments to its UPS franchisor."

- The timing of monies paid by BCC to The Neely Group reasonably suggests that the monies were used to "'rob Peter to pay Paul' in a failed attempt to prop up its failing UPS franchises."

- HNO and The Neely Group were sued for nonpayment of $285,980 in California by the assignee of an Interdependence receivable.

R. 48-1. The amended counterclaim asserts breach of contract, breach of fiduciary duty, and intentional misrepresentation in the alternative to claims for common law fraud and unjust enrichment. The fraud claim is now premised on the allegation that Neely falsely claimed that The Neely Group was in the business of introducing clients to Washington, D.C.-based politicians when it was actually in the business of operating UPS franchises. *Id.* ¶¶ 78–82.[1]

## Legal Standard

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Leave to amend is inappropriate "where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). The futility of an amendment is analyzed according to "the legal sufficiency standard of [Federal Rule of Civil Procedure] 12(b)(6) to determine whether the proposed amended complaint

---

[1] While the proposed pleading sought the addition of two new Counter-Plaintiffs, Owens and DonJasCorLee, LLC, Counter-Plaintiffs concede that such an addition would not be proper. R. 54 at 8.

5

fails to state a claim." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 529 (7th Cir. 2022).

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678).

In addition, a party alleging fraud or mistake "must state with particularity the circumstances constituting [the] fraud or mistake." Fed. R. Civ. P. 9(b). To meet this particularity requirement, "a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (quoting *United*

*States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). But the Seventh Circuit has "warned that courts and litigants often erroneously take an overly rigid view of the formulation" and that "[t]he precise level of particularity required under Rule 9(b) depends upon the facts of the case." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). At bottom, to satisfy the Rule 9(b) particularity standard, "[i]t is enough to show, in detail, the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy." *Rolls-Royce*, 570 F.3d at 854–55 (citations omitted).

In applying these standards, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

## Discussion

Counter-Defendants argue that the proposed amendment is futile and would unduly prejudice them. Beginning with futility, Counter-Defendants contend that Counter-Plaintiffs fail to adequately plead a fraud claim. To state a claim for fraud under Illinois law, Counter-Plaintiffs must plead with particularity: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Squires-Cannon v. Forest Preserve Dist. of Cook Cnty.*, 897 F.3d 797, 805 (7th Cir. 2018) (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (1996)).

7

Counter-Plaintiffs plead fraud with the requisite particularity. They allege the who: The Neely Group acting through Steve Neely. SAC ¶ 78. They allege the what: falsely claiming that The Neely Group was in the business of introducing clients to Washington, D.C.-based politicians and failing to disclose that in reality, The Neely Group operated UPS franchises. *Id.* ¶¶ 38–43, 78. They allege the when: from the contract negotiations in March 2022 through its performance. *Id.* ¶¶ 11, 82. And they allege the where and how: communications from Neely to Owens. *Id.* ¶¶ 78, 79. They further allege that they justifiably relied on those misrepresentations in deciding to pay The Neely Group $1,425,000. *Id.* ¶¶ 80, 82.

Counter-Defendants say that the alleged misstatements and omissions are nonactionable puffing. "Puffery is a statement of subjective description or opinion, and is not actionable as a fraudulent misrepresentation." *Castaneda v. Amazon.com, Inc.*, No. 22-CV-3187, 679 F.Supp.3d 739, 749 (N.D. Ill. June 26, 2023) (citations omitted). "Puffing denotes the exaggerations reasonably to be expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined." *Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 961 (N.D. Ill. 2024) (citations omitted). Here, the claimed misstatement is not a subjective description about the quality of The Neely Group's work, such as that The Neely Group had the *best* connections with the *most powerful* or *well-connected* politicians. Instead, it is an objective description of The Neely Group's business experience and capabilities, namely that it facilitated introductions with Washington, D.C.-based politicians.

8

Counter-Defendants argue that Counter-Plaintiffs do not adequately plead any omissions because they do not allege a duty to disclose. "A duty to disclose may be based on a fiduciary relationship[.]" *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 737 (7th Cir. 2017) (cleaned up). Because Neely was a corporate officer of HNO, he owed a fiduciary duty to HNO. *Anest v. Audino*, 332 Ill. App. 3d 468, 476, 773 N.E.2d 202, 209 (2002) (corporate officers owe a fiduciary duty to their corporations). In any case, because the Court finds that Counter-Plaintiffs adequately plead affirmative misrepresentations, failing to adequately plead an omission would not make amendment futile.

Counter-Defendants also take issue with certain allegations pled "on information and belief." Allegations "on information and belief" are permissible if "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Pirelli*, 631 F.3d at 442; *see also* Fed. R. Civ. P. 9(b) ("[M]alice, intent, knowledge, and other condition of mind of a person may be alleged generally."). The allegations at issue are about Counter-Defendants' knowledge and intent. The amended counterclaim includes sufficient facts from which the Court can reasonably infer that the Counter-Defendants acted with the requisite state of mind. Specifically, Counter-Plaintiffs allege that public filings indicate that The Neely Group owned UPS franchises and that Owens specifically asked Neely for The Neely Group's help in making introductions to politicians. Owning UPS franchises is a business capability entirely different in kind from introducing clients to politicians. Thus, the Court can reasonably infer that Counter-

9

Defendants knew the statements about the nature of their business were false and intended that such statements would induce Counter-Plaintiffs to enter into an agreement with and pay them for such services.

Counter-Defendants further contend that Counter-Plaintiffs do not adequately plead justifiable reliance. To determine whether reliance is justifiable, courts take into account "all of the facts which the plaintiff knew, as well as those facts the plaintiff could have learned through the exercise of ordinary prudence." *Adler v. William Blair & Co.*, 271 Ill. App. 3d 117, 125 (1st Dist. 1995). Counter-Defendants contend that the broad scope of their business, including their ownership of UPS franchises, was easily discoverable through public records from three Illinois Secretary of State records. The only records that make any mention of a UPS stores post-date the contract negotiations and performance at issue. *See* R. 51-2, 51-3. The other record merely states that the "purposes for which [The Neely Group] is organized" are: "The transaction of any or all lawful businesses for which corporations may be incorporated under the Illinois Business Corporation Act." R. 51-1. That generic language gives no indication as to what The Neely Group's business capabilities are. In other words, that statement does not undermine the plausibility of the allegation that Counter-Plaintiffs justifiably relied on The Neely Group's statements that it was in the business of introducing clients to Washington, D.C.-based politicians.

Counter-Defendants also argue the unjust enrichment claim is futile. Although breach of contract and unjust enrichment may be pled in the alternative, "a party

10

may not incorporate by reference allegations of the existence of a contract between the parties in an unjust enrichment count." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 886 (7th Cir. 2022). Because Counter-Plaintiffs incorporate by reference allegations as to the existence of the contract between The Neely Group and BCC in the unjust enrichment count, the pleading is defective. R. 48 ¶¶ 12, 83. However, such an error can be easily remedied. An unjust enrichment claim "may survive a motion to dismiss when the validity or the scope of the contract is difficult to determine[.]" *Id.* And here, *The Neely Group* alleges that the inclusion of BCC as a contracting party rather than HNO was a "mutual mistake." SAC ¶ 30. Accordingly, if the contracting parties remain in dispute, Counter-Plaintiffs can simply replace the incorporation language in the unjust enrichment count with the allegations about the absence of a valid and enforceable contract, which are in the SAC. With this small change, amendment is not futile.

Moving next to prejudice, Counter-Defendants contend that the amendment will unduly delay and expand discovery. The fact discovery cut off is not until March 31, 2025. That gives the parties plenty of time to conduct discovery on the new allegations, much of which is likely to be readily available from the bankruptcy proceeding. If two and a half months is not enough time, the Court will consider an extension. Further, the new fraud allegations are directed at The Neely Group's business capabilities, the performance of the contract, and discussions between Owens and Neely. Those topics were directly relevant to both the SAC and the

original counterclaim, so any expansion of discovery is minimal.[2] The proposed amendment does not unduly prejudice Counter-Defendants.

## Conclusion

For the foregoing reasons, the Court grants the motion for leave to file an amended counterclaim. Counter-Plaintiffs shall file an amended counterclaim incorporating the changes set forth in this opinion within 14 days.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: January 17, 2025

---

[2] The parties also argue about a reference in the instant briefing to a pending criminal matter. Because Counter-Plaintiffs do not seek to add any allegations to their counterclaim related to that pending criminal matter, there is no reason to discuss such matters at this time.